**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **SUSAN S.,**[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 21 C 3388** |
| | ) | |
| **v.** | ) | **Magistrate Judge Jeffrey Cole** |
| | ) | |
| **MARTIN J. O'MALLEY,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

"The 'logical bridge' language in our caselaw is descriptive but does not alter the applicable
substantial-evidence standard."
*Brumbaugh v. Saul*, 850 F. App'x 973, 977 (7th Cir. 2021).

Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income under

Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, 1382c, about five years

ago in April of 2019. (Administrative Record (R.) 213-20). She claimed that she had been disabled

since September 1, 2015 (R. 213, 215) due to "Osteoarthritis, Degenerative Disc, Scoliosis, Bulging

Disc on Lower Back, Anxiety, Depression, Panic Attacks" and "fall[ing] a lot." (R. 263). Over the

next two years, plaintiff's application was denied at every level of administrative review: initial,

reconsideration, administrative law judge (ALJ), and appeals council. It is the most recent ALJ's

decision that is before the court for review. *See* 20 C.F.R. §§ 404.955; 404.981. Plaintiff filed suit

under 42 U.S.C. § 405(g) back on June 23, 2021, and the case was fully briefed as of May 12, 2022.

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the
Social Security applicant in an Opinion. Therefore, the plaintiff shall be listed using only their first name and
the first initial of their last name.

[Dkt. ##13, 18, 19, 20].  After about a year and a half, the parties consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c) on January 25, 2024. Plaintiff asks the court to reverse and remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision.

I.

After an administrative hearing at which plaintiff, represented by counsel, testified, along with a vocational expert, the ALJ determined the plaintiff had the following severe impairments: degenerative disc disease; osteoarthritis of the bilateral knees; and chronic pain syndrome.  (R. 29). The ALJ said that the plaintiff's other impairments – bilateral cataracts, depression, and anxiety – caused no more than minimal limitations and were not severe.  (R. 30).  With regard to plaintiff's depression and anxiety, the ALJ found that the plaintiff had no limitations in understanding, remembering, or applying information or adapting or managing oneself, and only mild limitations in understanding, remembering, or applying information and in interacting with others.  (R. 30-31). The ALJ then found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, specifically considering Listings 1.02 (major dysfunction of a joint(s)) and 1.04 (e disorders of the spine). (R. 31-32).

The ALJ then determined that the plaintiff had the residual functional capacity ("RFC") to perform light work "except that she can frequently climb ramps, stairs, ladders, ropes, and scaffolds; frequently balance; and occasionally stoop, kneel, crouch, and crawl." (R. 32).  The ALJ then summarized the plaintiff's allegations, that she said she had limitations in lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, completing tasks, and using her hands.

The ALJ said the plaintiff testified that she had pain in her back and knees, spent most of her time sitting down, wore a back brace, and that she could stand for about fifteen minutes, and lift fifteen pounds. The ALJ added that the plaintiff claimed to have difficulty with stairs because of her knees, and that she spent most of her time sitting with her 80-year-old mother. She had to hold onto things when she walked, and she used a cane when she leaves the house. Finally, the ALJ noted that plaintiff said that she saw a psychiatrist every six months, and that she took mental health medications. The ALJ then found that the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that the [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 33).

The ALJ then reviewed the medical evidence. In July 2016, the plaintiff sought treatment for an off-balance gait and left hamstring cramps. Her back was nontender with normal alignment, and her musculoskeletal examination showed normal range of motion and strength, no tenderness or swelling, no deformity, and negative Romberg. In March 2017, she had no midline or vertebral bony tenderness in her back and no flank tenderness, she had 5/5 strength in all extremities with no numbness or tingling, and her musculoskeletal examination showed full range of motion of all extremities with no pain or difficulty, including internal and external rotation of the hips. In October 2017, her back was nontender with normal range of motion and alignment, and she had normal strength and sensation.

In February 2018, she complained of chronic pain in her back and knees, and she reported sometimes falling as her knees gave way. Examination revealed decreased range of motion in both

3

knees, no tenderness, swelling, or effusion. In April 2018, she complained of mild knee pain aggravated by movement and weight bearing, and examination revealed decreased range of motion in both knees and tenderness of the right knee, but knee x-rays in June 2018 showed only minimal degenerative changes and minimal narrowing at the medial joint compartments. Plaintiff had full weight bearing on both legs, and she ambulated without the use an any assistive device. In August 2018, she had 5/5 strength in all extremities, and was able to walk on heels, toes, and tandem gait without difficulty.

A December 2018 MRI of plaintiff's lumbar spine revealed multilevel degenerative changes but no significant spinal or foraminal narrowing. In February 2019, upon examination, she was in no distress, and her musculoskeletal exam showed no edema or tenderness. A March 2019 examination revealed decreased range of motion and tenderness of the lumbar spine. (R. 33-34).

Plaintiff had a consultative examination in June 2019, in connection with her application for benefits. She described her back pain as constant, dull, and occasionally sharp, associated with left lower extremity spasms and difficulty walking. She also complained of pain in her knees and hands, difficulty with prolonged standing and walking, and a history of falls. Upon examination, the plaintiff was able to squat completely, although she had difficulty getting up, and she was able to stand on each foot alone, but was unable to balance on the left. Her gait was guarded, but non-antalgic without the use of assistive devices, and she had moderate left knee tenderness. She was able to get on and off the exam table with no difficulty, she could walk greater than 50 feet without support, she was able to perform the toe/heel walk, her grip strength was 5/5 in both hands, she had a normal ability to grasp and manipulate objects, and she was able to fully extend her hands, make fists, and oppose fingers. Range of motion was normal throughout. She had no lumbar tenderness,

straight leg raise testing was negative bilaterally, there were no focal deficits, her motor strength was 5/5 in all limbs, cerebellar testing was negative, her cranial nerves were intact, the Romberg test was negative, and deep tendon reflexes and sensory examination were both equal and satisfactory. An x-ray of her left knee showed only mild degenerative changes. (R. 33-34).

The ALJ noted that plaintiff used a cane in October and November of 2019. She went on to relate that another x-ray of the plaintiff's knees in October 2019 showed mild to moderate osteoarthrosis of the medial compartment of each knee. In November 2019, the plaintiff said her back pain had improved, but that she felt pain going down her legs when she leaned forward to pick up something or tie her shoelaces. Examination at that time revealed crepitus in both knees and positive straight leg raise testing on the right side. The diagnosis included chronic pain syndrome. In April 2020, plaintiff complained of weakness in her legs, a "snapping" sensation in her lower back with certain motions and postures, and worsened knee pain. Upon examination, her gait was slow and waddling. A May 2020 lumbar MRI showed a slight progression of degenerative change at L3-L4, but otherwise no significant change from 2018. In July 2020, she had bilateral paralumbar tenderness, but she was ambulating without difficulty, her gait was within normal limits, and she had 5/5 strength in both legs. (R. 33-35).

The ALJ then considered the medical opinions. She found the opinions from the State agency medical consultants, Dr. Calixto Aquino and Dr. James Madison, which limited the plaintiff to light work with postural limitations, persuasive because they were consistent with the record. Similarly, she found the opinions from the State agency psychological consultants, Lionel Hudspeth, Psy.D. and Howard Tin, Psy.D., who found that the plaintiff's mental impairments were non-severe persuasive because they were consistent with the record. (R. 35).

5

While the ALJ found Dr. Ikenna Okpareke's opinion that the plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently persuasive because it was consistent with the record, she rejected the doctor's estimates that the plaintiff could stand and/or walk less than two hours in an eight-hour day, had to use a cane for occasional standing and walking, needed an unscheduled break every two hours, and that she would be absent from work about three days per month, and that her pain and other symptoms would constantly interfere with her attention and concentration constantly not persuasive because they were not consistent with the record. The ALJ pointed to a number of essentially normal examination findings from March 2017 through June 2019. The ALJ also explained that Dr. Okpareke's own examination notes did not support the doctor's opinion, including normal examination findings and normal ambulation without a cane. (R. 35-36).

From there, the ALJ went on to note that the vocational expert testified that the plaintiff's past work as a cosmetologist (DOT #332.271-010) was light work, both as the plaintiff performed it and as it was generally performed in the national economy. The ALJ then relied on the vocational expert's testimony that a hypothetical individual with the same age, education, work experience, and residual functional capacity as the plaintiff, would be able to perform the plaintiff's past relevant work to found that the plaintiff was not disabled and not entitled to benefits under the Act. (R. 36-37).

## II.

The court's review of the ALJ's decision is "extremely limited." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022). If the ALJ's decision is supported by "substantial evidence," the court on judicial review must uphold that decision even if the court might have decided the case

differently in the first instance. See 42 U.S.C. § 405(g). The "substantial evidence" standard is not a high hurdle to negotiate. *Biestek v. Berryhill*, – U.S. –, –, 139 S. Ct. 1148, 1154 (2019); *Baptist v. Kijakazi*, 74 F.4th 437, 441 (7th Cir. 2023); *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023). Indeed, it may be less than a preponderance of the evidence, *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007), and is only that much "evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Tutwiler v. Kijakazi*, 87 F.4th 853, 857 (7th Cir. 2023).

To determine whether "substantial evidence" exists, the court reviews the record as a whole, but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving debatable evidentiary conflicts, or determining credibility. *Crowell v. Kijakazi*, 72 F.4th 810, 814 (7th Cir. 2023); *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022); *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). Where reasonable minds could differ on the weight of evidence, the court defers to the ALJ. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021); *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020); *see also Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)(". . . the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."); *Blakley v. Comm'r of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009)("The substantial-evidence standard ... presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.").

But, in the Seventh Circuit, the ALJ also has an obligation to build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor–Spinner v.*

7

*Astrue,* 627 F.3d 614, 618 (7th Cir.2010). The court has to be able to trace the path of the ALJ's reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011).

The Seventh Circuit has explained that, even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build that logical bridge. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)(". . . we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."); *see also Jarnutowski*, 48 F.4th at 774 (". . . the Commissioner argues, we should affirm the ALJ's decision because it was supported by the evidence. Possibly. But we cannot reach that conclusion from the ALJ's analysis."); *but see, e.g., Riley v. City of Kokomo*, 909 F.3d 182, 188 (7th Cir. 2018)("But we need not address either of those issues here because, even if [plaintiff] were correct on both counts, we may affirm on any basis appearing in the record,...."); *Steimel v. Wernert*, 823 F.3d 902, 917 (7th Cir. 2016)("We have serious reservations about this decision, which strikes us as too sweeping. Nonetheless, we may affirm on any basis that fairly appears in the record."); *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012)("[District court] did not properly allocate the burden of proof on the causation element between the parties,...No matter, because we may affirm on any basis that appears in the record.").

Of course, this is a subjective standard, and a lack of predictability comes with it for ALJs hoping to write opinions that stand up to judicial review. One reviewer might see an expanse of deep water that can only be traversed by an engineering marvel like the Mackinac Bridge. Another might see a trickle of a creek they can hop across with barely a splash. But, the Seventh Circuit has also

called this requirement "lax." *Crowell*, 72 F.4th at 816; *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). All ALJs really need to do is "minimally articulate" their reasoning. *Grotts v. Kijakazi*, 27 F.4th 1273, 1276 (7th Cir. 2022); *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016). "If a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough." *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985).[2] The ALJ did enough here.

---

[2] Prior to *Sarchet*'s "logical bridge" language, the court generally employed the phrase "minimal articulation" in describing an ALJ's responsibility to address evidence. *Zalewski v. Heckler*, 760 F.2d 160, 166 (7th Cir. 1985)(collecting cases). The court's focus was on whether an ALJ's opinion assured the reviewing court that he or she had considered all significant evidence of disability. In *Zblewski v. Schweiker*, 732 F.2d 75 (7th Cir. 1984), for example, the court "emphasize[d] that [it] d[id] not require a written evaluation of every piece of testimony and evidence submitted" but only "a minimal level of articulation of the ALJ's assessment of the evidence...in cases in which considerable evidence is presented to counter the agency's position." *Zblewski*, 732 F.2d at 79. In *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985), the court rejected a plaintiff's argument that an ALJ failed to adequately discuss his complaints of pain and was more explicit about how far ALJs had to go to explain their conclusions:

> We do not have the fetish about findings that [the plaintff] attributes to us. The court review judgments, not opinions. The statute requires us to review the quality of the evidence, which must be "substantial," not the quality of the ALJ's literary skills. The ALJs work under great burdens. Their supervisors urge them to work quickly. When they slow down to write better opinions, that holds up the queue and prevents deserving people from receiving benefits. When they process cases quickly, they necessarily take less time on opinions. When a court remands a case with an order to write a better opinion, it clogs the queue in two ways—first because the new hearing on remand takes time, second because it sends the signal that ALJs should write more in each case (and thus hear fewer cases).

> The ALJ's opinion is important not in its own right but because it tells us whether the ALJ has considered all the evidence, as the statute requires him to do....This court insists that the finder of fact explain why he rejects uncontradicted evidence. One inference from a silent opinion is that the ALJ did not reject the evidence but simply forgot it or thought it irrelevant. That is the reason the ALJ must mention and discuss, however briefly, uncontradicted evidence that supports the claim for benefits.

*Stephens*, 766 F.2d at 287 (citations omitted).

**III.**

The plaintiff raises a host of issues with the ALJ's decision, which she gathers into four categories. The first category is a collection of criticisms of how the ALJ evaluated the medical opinion from one of the plaintiff's treating physicians. The second covers the ALJ's discussion of the physical requirements of the plaintiff's past work as a cosmetologist. The third category has to do with whether the plaintiff needs a cane. The fourth includes a few criticisms of the ALJ's evaluation of the plaintiff's allegations. There was even a fifth category at one time, which asserted that the ALJ's decision was unconstitutional for a number of reasons, but the plaintiff abandoned that argument in her reply brief. [Dkt. #13, at 20 n.10].[3]

**A.**

The plaintiff first complains that the ALJ failed to properly evaluate Dr. Okpareke's opinion that, essentially, she was disabled. Dr. Okpareke filled out a form from the plaintiff's attorney in October or 2019. (R. 786-88); *see, e.g., Trottier v. Saul*, 809 F. App'x 326, 327 (7th Cir. 2020)(criticizing doctor's opinion expressed by checking boxes rather than explaining how medical evidence supported his conclusions); *Urbanek v. Saul*, 796 F. App'x 910, 915 (7th Cir. 2019)(questioning persuasive value of a checklist opinion); *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015)(checklist observations are ... "less useful to an ALJ" than a doctor's narrative summary). He listed plaintiff's diagnosis as lumbar spondylosis, said her prognosis was good, and listed

---

[3] That fifth argument was a bit of a head-scratcher, as the plaintiff argued that the entire structure of the Social Security Administration was unconstitutional but, at the same time, asked that her case be remanded back to that unconstitutional agency for further proceedings. [Dkt. #13, at 14-15].

"clinical and objective signs" as "back pain, gait disturbance, activity intolerance."[4]  The doctor checked "constantly" for how often plaintiff's pain would interfere with her concentration.  (R. 786).  He circled "more than 2 Hours" for how long plaintiff could sit at one time, "15 Minutes" for how long plaintiff could stand at one time, and checked boxes indicating plaintiff could stand/walk for less than two hours a day and sit for about four hours a day.[5]  (R. 786-87).  The doctor checked "yes" to indicate that plaintiff needed a job where she could shift positions at will.  And he checked "cane" under the question "[w]hile engaging in occasional walking/standing, which of the following must your patient use." (R. 787).[6] Dr. Okpareke also checked the "about three days a month" box for how many days plaintiff would be absent from work.  (R. 788).

Under the applicable regulations, an ALJ must evaluate the persuasiveness of medical opinions in light of several factors, including  "supportability " (how well supported an opinion is by medical evidence and the explanations given in the opinion) and "consistency" (how consistent an opinion is with other evidence in the record). See 20 C.F.R.  § 404.1520c(b)(2),(c)(1)-(2). "Consistency" and "supportability" are the two "most important factors" to be considered when it comes to weighing the persuasiveness of a medical opinion. 404.1520c(b)(2); *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022). ALJs don't have to explain how they consider all of the factors, but they do have to  explain why an opinion is consistent with the record as a whole and how well it is

_____

[4]*Cf. Kolar v. Berryhill*, 695 Fed. Appx. 161, 162 (7th Cir. 2017)(explaining that pain is subjective); *Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006)(distinguishing subjective pain from objective referents).

[5] Obviously, doing the math, that leaves a lot of hours every day when plaintiff is, presumably, lying down.  But, at the administrative hearing, the plaintiff testified that she sat "most of the time"  (R. 57) or sat "all day long." (R. 59).

[6] The doctor was given no option to indicate the plaintiff didn't need an assistive device.  (R. 787 ("Cane; Walker; Crutches; Two canes; Other").

supported by medical evidence. *Bakke*, 62 F.4th at 1067. The ALJ did both those things here and provided a very thorough discussion of the medical record to back it up.

The plaintiff argues that the ALJ only mentioned three instances of treatment in dismissing the ALJ's opinion, and that wasn't enough. [Dkt. #13, at 3-5]. But to make such an argument, the plaintiff has to ignore a fair portion of the ALJ's Opinion. While, the ALJ provided three examples of records that she felt did not support Dr. Okpareke's opinion in the section of her decision where she discussed the medical opinions, but she also provided an extensive summary of the medical record before that. Summaries, of course, are perfectly acceptable. *Grotts*, 27 F.4th at 1278; *Gedatus*, 994 F.3d at 901. The court must read an ALJ's opinion as a whole rather than pick it apart bit by bit. *Zellweger v. Saul*, 984 F.3d 1251, 1255 (7th Cir. 2021); *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). It wasn't necessary for the ALJ to go over everything twice. *Zellweger*, 84 F.3d 1251, 1255 (7th Cir. 2021); *Jeske v. Saul*, 955 F.3d 583, 590 (7th Cir. 2020); *Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015).

When one does read the ALJ's summary of the medical evidence, there is at least substantial evidence supporting her rejection of Dr. Okpareke's very limited view of the plaintiff's abilities. In the main, clinical findings were normal or mild. As the ALJ noted, knee x-rays in June 2018 showed only minimal degenerative changes and minimal narrowing at the medial joint compartments. (R. 33, 489). In June 2019, an x-ray of the left knee continued to show only mild degenerative changes. (R. 34, 580-81). And in October 2019 knee imaging showed mild to moderate osteoarthrosis of the medial compartment of each knee. (R. 34, 799). While an MRI of the lumbar spine in December 2018 revealed multilevel degenerative changes, there was no significant spinal or foraminal narrowing. (R. 33, 497-98). There was only a slight progression at L3-4 by May 2020, and no other

12

significant change. (R. 34, 939).

Plaintiff's gait was also, in the main, normal. The ALJ noted that in June 2018, the plaintiff's gait was normal and full weight-bearing without assistive devices. (R. 34, 490). In August 2018, plaintiff had full strength in all extremities, and was able to walk on heels, toes, and tandem gait without difficulty. (R. 34, 501). In June 2019, plaintiff's gait was observed to be guarded, but non-antalgic without the use of assistive devices. (R. 33, 606). She was said to have a slow and waddling gait in April 2020. (R. 34, 934). But, then in July 2020, the plaintiff was observed to ambulate without difficulty, with full strength in both legs and a normal gait. (R. 35, 938).

The ALJ also noted repeated findings of full range of motion, normal motor strength, and absence of tenderness. (R. 33-35). As one can see, and as is the case with most medical records, findings were not entirely consistent. But, the ALJ did not ignore abnormal findings, noting instances of mild tenderness, crepitus, and use of a cane on two occasions in October and November of 2019. So, contrary to the plaintiff's reading of the ALJ's opinion, "[t]his is not a case where an ALJ ignored evidence contrary to his conclusion." *Gedatus*, 994 F.3d at 905. An ALJ doesn't have to mention every single piece of evidence contrary to her conclusions. Nine-hundred page opinions would serve no helpful purpose. It is sufficient that ALJ acknowledges such evidence and shows an understanding of the overall record. *Combs v. Kijakazi*, 69 F.4th 428, 435–36 (7th Cir. 2023); *see also Deborah M. v. Saul*, 994 F.3d 785, 788–89 (7th Cir. 2021) (finding no error where omitted evidence "did not reveal any substantially different information" than addressed evidence). The ALJ certainly did that here. She clearly realized that the evidence all didn't go one way, and she correctly grasped that it mostly went one way, and that wasn't the way Dr. Okpareke's rather restricted view

13

of the plaintiff's capabilities went.

While reviewing courts are not supposed to join plaintiffs in nit-picking ALJ's opinions, *see, e.g.*, *Poole v. Kijakazi*, 28 F.4th 792, 797 (7th Cir. 2022); *Gedatus*, 994 F.3d at 901, we will undertake a bit of that here, as it serves to show that generally, the exercise is of little value. As already noted, the plaintiff lodges three somewhat trifling critiques of the ALJ's discussion of whether Dr. Okpareke's opinion is consistent with the medical record, focusing only on the three examples the ALJ provided in that section of her opinion. First, the plaintiff takes issue with the ALJ's reference to treatment on March 12, 2017, when the plaintiff went to the emergency room intoxicated (R. 677-80)– or, as the plaintiff's brief puts it, "an acute treatment need." [Dkt. #13, at 3]. She was examined and, as the ALJ noted, was observed to have a full range of motion in all her extremities, full strength, and no motor or sensory deficits. (R. 36, 680). The plaintiff submits that the ALJ ought not to have made note of these findings because the emergency room doctors had no reason to assess plaintiff's musculoskeletal condition. [Dkt. # 13, at 3]. But, they did – for obvious reasons, given that the plaintiff arrived intoxicated – and found it to be normal. This wasn't a case of treatment providers focusing on something else instead and giving the real problem short shrift. *Cf. Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995)(doctors asked to treat physical ailments might not provide a psychological exam).

Next, the plaintiff argues that when referencing an examination dated June 2018, the ALJ omitted some findings, including slightly hunched slow gait, edema, reduced strength, and indicating degenerative changes. [Dkt. #13, at 3-4 ]. But, the report the ALJ cited to (R. 36), at Ex. 3F page 10 (R. 490), mentions none of those findings. Instead, just as the ALJ summarized, the doctor examining the plaintiff reported the plaintiff was full weight-bearing and walking without assistive

14

devices, and that she had mild tenderness but no swelling around the knees and full range of motion with mild crepitus and pain. (R. 490). The confusion might be due to the "Visit date" at the top of the page being June 5, 2018, and the "Encounter date" a few lines down being September 4, 2018. (R. 490). The report the plaintiff cites was from a physician's assistant – who may or may not be an acceptable medical source in this case, § 404.1502(a)(8)(explaining that an LPA is only an acceptable medical source "for impairments within his or her licensed scope of practice"), and noted the hunched gait, but only mild edema, full flexion without crepitus, nearly full strength at 4/5, and only minimal degenerative changes. (R. 489). Either report – essentially mild or minimal findings – could support the ALJ's rejection of assessment of Dr. Okpareke's opinion. Could a different adjudicator come to another conclusion? Perhaps, but this is a "substantial evidence" review, not a reweighing of the evidence *de novo*. *Tutwiler*, 87 F.4th at 859.

Third, the plaintiff complains that the ALJ failed to mention that the consultative examiner noted a guarded gait, difficulty rising from a squatting position, inability to balance on the left foot, and left knee tenderness. [Dkt. #13, at 4]. But, contrary to the plaintiff's reading of the opinion, the ALJ did mention those findings: "[u]pon examination by the consultative examiner, the [plaintiff] was able to squat completely*, but had difficulty getting up*, and she was able to stand on each foot alone, but was *unable to balance on the left*. (13F/3). Her *gait was guarded*, but non-antalgic without the use of assistive devices, and she had *moderate left knee tenderness* (13F/3)." (R. 33-34 (emphasis added)). The plaintiff's problem seems to be that the ALJ did not repeat these findings in his discussion of Dr. Okpareke's opinion, but that wasn't necessary. Reviewing courts read ALJ's opinions as a whole, and ALJ's are not mandated to repeat discussions of evidence redundantly in section after section. *Zellweger*, 984 F.3d at 1255; *Jeske*, 955 F.3d at 590; *Curvin*,

778 F.3d at 650. A reviewing court need not discount a discussion "simply because it appears elsewhere in the decision." *Curvin*, 778 F.3d at 650.

The plaintiff's criticisms of the ALJ's discussion of whether Dr. Okpareke's opinion was supported by his treatment notes are similarly unavailing. Once again, the plaintiff incorrectly claims the ALJ failed to mention findings [Dkt. #13, at 5] that the ALJ clearly mentioned elsewhere in her opinion. The ALJ *did* acknowledge the mention of "a slow, waddling gait." (R. 34 ("Upon examination, her gait was slow and waddling (24F/10-11)."). The ALJ *did* mention "imaging files indicating osteoarthritis in the knees, and multilevel degenerative changes in the lumbar spine." (R. 33 ("Knee x-rays in June 2018 showed only minimal degenerative changes and minimal narrowing at the medial joint compartments (3F/7-9)"; "An MRI of her lumbar spine from December 2018 revealed multilevel degenerative changes without significant spinal or foraminal narrowing (4F/7)," R. 34 ("An x-ray of her left knee showed only mild degenerative changes (11F)"; "Knee imaging in October 2019 showed mild to moderate osteoarthrosis of the medial compartment of each knee (17F/10)"; "A lumbar MRI in May 2020 showed a slight progression of degenerative change at L3-L4, but otherwise no significant change from 2018 (24F/16)"). The ALJ *did* mention the single positive straight leg raising test (R. 34 ("Examination revealed crepitus in both knees and positive straight leg raise testing on the right side (17F/10)."), and the two occasions when plaintiff ambulated with a cane. (R. 35 ("I acknowledge that notes from October and November 2019 indicate that the claimant ambulated with a cane (17F/8, 15)."").

Overall, however, the ALJ weighed Dr. Okpareke's reports as failing to support his opinion. The court cannot reweigh that evidence, but it has to be said that Dr. Okpareke's examination findings are more sketchy than detailed, and more unremarkable than remarkable:

16

May 28, 2019: Ambulation: ambulating without difficulty; Range of motion: flexion: fingers to ankles, extension: normal, lateral bending: mildly decreased, rotation: mildly decreased. (R. 827).

June 25, 2019: Ambulation: ambulating without difficulty; Back: tenderness; Ambulation: ambulating without difficulty; positive straight leg raising left side. (R. 821).

July 30, 2019: Ambulation: ambulating without difficulty; Back: positive tenderness and facet loading, normal range of motion; negative straight leg raise bilaterally; negative Faber test bilaterally. (R. 815).

August 21, 2019: Ambulation: ambulating without difficulty; Back: stable. (R. 809)
.
October 4, 2019: Ambulation: ambulating with a cane; spinal tenderness; significantly decreased range of motion; strength (LE) 5/5 bilaterally; Gait: slow, waddling. (R. 804).

November 4, 2019: Ambulation: ambulating with a cane; Extremities: + crepitus palpable in both knees; Neurologic: 5/5 motor strength bilat LEs; SLR + right side (R. 931).

April 20, 2020: Ambulation: ambulating without difficulty; Extremities: Right knee scab. Neurologic: Strength(UE): 5/5 bilaterally; Gait: slow, waddling.  (R. 934).

July 9, 2020: Ambulation: ambulating without difficulty; Straight leg raise: negative; Strength(LE): 5 / 5 bilaterally; Gait: within normal limits. (R. 938).

Aside from about a month between October and November 2019, and perhaps an isolated finding or two elsewhere, one can easily see why the ALJ didn't think Dr. Okpareke's examination notes did not paint a picture of someone who could not stand or walk without a cane or could not even sit for more than four hours a day and had to change positions at will.  The ALJ's evaluation of the doctor's opinion was supported by "substantial evidence."

**B.**

The next category is the ALJ's assessment of the plaintiff's past work as a cosmetologist. First, the plaintiff claims that the "ALJ, as well as the vocational expert (VE), failed to consider the

specific physical demands of the past work." [Dkt. #13, at 7]. But, at the administrative hearing, with both the vocational expert and her counsel present, the plaintiff testified that she was on her feet "all the time," and the heaviest thing she had to lift was a twenty-pound box of product. (R. 54-55). The vocational expert said she was "clear" as to the demands of the plaintiff's past work. (R. 55). The vocational expert later explained that plaintiff's past work as a cosmetologist was "light, both as performed and per the DOT." (R. 68). Indeed, as the vocational expert reported, the DOT describes the work of cosmetologist as light work. DOT#332.271-010; https://occupationalinfo.org/33/332271010.html. And, of course, light work is defined by the regulations as involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "a good deal of walking or standing . . . ." 20 C.F.R. §§ 404.1567(b); 416.967(b). So, it's unclear what the plaintiff thinks the ALJ, or the vocational expert, missed.

From there, the plaintiff complains the ALJ also failed to find and assess her abilities to stand and to walk in violation of SSR 96-8p. [Dkt. #13, at 9]. The ALJ found that plaintiff had the ability to perform "light work as defined in 20 CFR 404.1567(b) and 416.967(b)," with a few additional restrictions regarding climbing ramps, stairs, ladders, ropes, and scaffolds; balancing, stooping, kneeling, crouching, and crawling." (R. 32). As just noted, in terms of standing and walking, the shorthand "light work" means a "good deal of standing and walking." So, the ALJ determined that plaintiff could manage a "good deal of standing and walking." Throughout her decision, the ALJ repeatedly tied this finding to her discussion of the medical evidence which, as already noted, consisted of mostly mild abnormalities. The plaintiff seems to speculate that she might only be able to sit and operate hand and foot controls [Dkt. #13, at 10], but points to no

18

evidence to suggest that's the case and, at step four, it's her burden to do so. *Mandrell v. Kijakazi*, 25 F.4th 514, 516 (7th Cir. 2022); *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). Moreover, the ALJ specified the additional limitations on plaintiff's capacity for light work and those did not include not being able to walk stand "all the time" or being limited to sitting and operating hand and foot controls. So, again, it is difficult to see what more the plaintiff wanted the ALJ to do.[7]

## C.

The plaintiff's next problem with the ALJ's decision is the fact that the ALJ felt that the medical record did not support the need to use a cane. Obviously, as previously discussed, there is plenty of evidence to support the ALJ's finding, including the repeated assessments of the plaintiff's treating physician that she ambulated without difficulty. (R. 809, 815, 821, 827, 934, 938). Yes, as previously discussed and also as noted by the ALJ, there were two instances in October and November of 2019 where plaintiff was observed to be using a cane, but these occasions appear to have been connected to her falling while climbing a retaining wall and falling when chasing after her dog in a creek. (R. 797, 799, 832). Neither activity is likely to be a part of cosmetology work.

---

[7] Plaintiff also submits that by failing to provide a specific functional assessment of her abilities to stand and walk and instead describing them in terms of the exertional category, "light work", the ALJ ran afoul of SSR 96-8p. [Dkt. #13, at 9]. That ruling somewhat unhelpfully states that ALJs *must not* express a residual functional capacity in terms of the exertional categories of "sedentary," "light," "medium," "heavy" and "very heavy" work, and also states that ALJs *may* express residual functional capacity in terms of an exertional category, such as light, if it becomes necessary to assess whether an individual is able to do his or her past relevant work as it is generally performed in the national economy. [Dkt. #13, at 9].

Here, the ALJ relying on the vocational expert's testimony, found that the plaintiff could perform her past work both as she performed it *and* as it was generally performed in the national economy. Arguably, the ALJ was allowed to use the "light work" shorthand. But, in any event, the Seventh Circuit has stated that the failure to follow SSR 96-8p and provide a function-by-function analysis does not necessarily require a remand. *Jeske*, 955 F.3d at 596.

19

It seems from the plaintiff's brief that she believes if she says she needs a cane, that's enough. But, allegations are not enough. *Grotts*, 27 F.4th at 1278; *Zoch*, 981 F.3d at 601. Indeed, in case after case the courts have made clear that in any context merely saying so does not make it so. It never has. *See, e.g.*, *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 770 (7th Cir. 2020)("Notably absent from these allegations, however, is any proposed proof that state actors, not municipal actors, were engaged in this *de facto* discrimination."); *Donald J. Trump for President, Inc. v. Secy of Pennsylvania*, 830 F. Appx 377, 381 (3d Cir. 2020)("But calling an election unfair does not make it so. Charges require specific allegations and then proof. We have neither here."); *Guerrero v. BNSF Ry. Co.*, 929 F.3d 926, 929 (7th Cir. 2019); *Madlock v. WEC Energy Group, Inc.*, 885 F.3d 465, 473 (7th Cir. 2018)*; United States v. 5443 Suffield Terrace, Skokie, Ill.,* 607 F.3d 504, 510 (7th Cir. 2010). *Stromberg Motor Devices Co. v. Zenith Carburetor Co.*, 254 F. 68, 69 (7th Cir. 1918). Even the Solicitor General's unsupported assertions are not enough. *Digital Realty Trust, Inc. v. Somers*, _U.S._, 138 S.Ct. 767, 779 (2018); *Bowers v. Dart*, 1 F.4th 513, 520 (7th Cir. 2021)("With all of this evidence in mind, we share the district court's conclusion that a rational juror could doubt that Bowers was telling the truth by insisting he could not walk."). *See also Planned Parenthood of Indiana and Kentucky v. Box*, 949 F.3d 997, 998 (7th Cir. 2019)("Talk is cheap"). An attorney's assertions in a motion or brief are not evidence. *See INS v. Phinpathya*, 464 U.S. 183, 188 n. 6, 104 S.Ct. 584, 78 L.Ed.2d 401 (1984); *Mitze v. Colvin*, 782 F.3d 879, 882 (7th Cir. 2015); *Malik v. Holder*, 546 F. App'x 590, 593 (7th Cir. 2013); *Gross v. Knight*, 560 F.3d 668, 672 (7th Cir.2009).

Finally, her testimony at her hearing that she used a cane every time she left the house and had done so since 2016 (R. 66) is contradicted by the medical record. The ALJ's decision to not include a cane requirement in her residual functional capacity determination was supported by

"substantial evidence."

**D.**

Finally, the plaintiff argues that the ALJ failed to properly assess her allegations regarding her limitations. [Dkt. #13, at 12-14]. The ALJ felt that the plaintiff's allegations of disabling symptoms were not consistent with the record. (R. 33, 34). The ALJ recounted the medical evidence which, again, was made up of mostly unremarkable or mild findings. And, as she was required to do, compared those findings with plaintiff's allegations of disabling symptoms. *Martin v. Kijakazi*, 88 F.4th 726, 730 (7th Cir. 2023)(noting that ALJs must consider whether applicant's symptoms are consistent with the medical signs and laboratory findings of record);*Grotts*, 27 F.4th at 1278.

The plaintiff contends that the record was "replete with exam findings, abnormal knee and back imaging, failed physical therapy, and reports of pain and significant limitations . . . ." [Dkt. #13, at 14]. That's perhaps one way to look at it. But, "reports of pain" are, of course, subjective allegations and not "medical evidence." *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010). As for imaging, as already discussed, abnormal imaging was characterized, in the main, as mild or at most, moderate. And, finally, the record was also at least as "replete" with findings of normal gait, no tenderness or only mild tenderness, normal range of motion, and normal strength. Again, as the ALJ acknowledged, the record was, at best, a mixed bag. But, arguably, more of the bag supported the ALJ's conclusions than undermined them. In other words, "the evidentiary record does not uniformly support [plaintiff's] assertions." *Tutwiler*, 87 F.4th at 859. What the plaintiff is asking is that the court reweigh the evidence and substitute its judgment for that of the ALJ – and arrive at the plaintiff's preferred conclusion. That is too big an ask and, is something the court isn't allowed to do. *Tutwiler*, 87 F.4th at 859 (". . . judicial review is not designed for appellate judges looking at

21

a transcript to re-weigh conflicting evidence."); *Combs v. Kijakazi*, 69 F.4th 428, 434 (7th Cir. 2023); *Bakke*, 62 F.4th at 1068.

## CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment [Dkt. #18] is granted, and the ALJ's decision is affirmed. The plaintiff's request that the ALJ's decision be reversed [Dkt. #13] is denied.

ENTERED:_____

UNITED STATES MAGISTRATE JUDGE

**DATE:** 3/25/24